10

FILED

√6

AUG 2 8 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA



POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )        Case No.  08-16768-B-11
                                         )
Big3D, Inc.,                             )        DC No. MFG-1
                                         )
                    Debtor.              )
_____ )

## MEMORANDUM DECISION REGARDING MOTION FOR RETROACTIVE ADEQUATE PROTECTION

Edmond J. Sherman, Esq., appeared on behalf of the moving party, People's Capital and Leasing Corp.

Hilton A. Ryder Esq., appeared on behalf of the debtor, Big3D, Inc.

Before the court is a motion (the "Motion") by People's Capital and Leasing Corp. ("People's Capital") for adequate protection of its interest in a printing press used by the Debtor (the "Printing Press").  The request for adequate protection was first raised in a motion for relief from the automatic stay and adequate protection heard by this court on April 23, 2009.  As a resolution of that matter, the parties have stipulated that the Debtor may continue to use the Printing Press conditioned upon prospective adequate protection payments in the amount of $3,500 per month beginning May 15, 2009 (the "Stipulation").[1]  The court invited the parties to submit supplemental briefs and took under submission the issue of People's Capital's demand for retroactive adequate protection for the six months that the Debtor operated in bankruptcy and used the Printing Press prior to the hearing on the

---

[1]The court's order dated May 13, 2009, specifically reserved for further determination the issue presented here; People's Capital's right to compensation for "past depreciation since the filing of the Bankruptcy petition."

194

Motion and the Stipulation; the petition was filed on October 23, 2008. People's Capital asks for an additional award of $45,000 payable at the rate of $5,000 per month in addition to the payment provided for in the Stipulation, raising the total adequate protection payment to $8,500 per month. The Debtor contends that People's Capital's interest was adequately protected prior to the Stipulation by an equity cushion in the Printing Press and that no additional adequate protection is required by the Bankruptcy Code. For the reasons set forth below, the Motion for retroactive adequate protection will be denied.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 362 and 362[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G) & (O).

**Background and Findings of Fact.**

The Debtor is in the commercial printing business. One piece of equipment which the Debtor uses regularly is the Printing Press, a 2005 KBA Genius 52U five color offset press. The Debtor relies heavily on the Printing Press and there is no dispute that the Printing Press is necessary to the Debtor's ability to reorganize and survive. The Debtor acquired the Printing Press in December 2005 under an agreement entitled "Master Lease Agreement" with People's Capital (the "Sales Contract"). This bankruptcy was filed on October 23, 2008. At some time prior to

---

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated on or *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

the bankruptcy the Debtor defaulted on its payment obligation to People's Capital and, in July 2008, People's Capital commenced a civil action against the Debtor in the Fresno County Superior Court. On October 21, 2008, People's Capital obtained a writ of possession for the Printing Press. People's Capital contends that it was prepared to enforce the writ of possession immediately after its issuance. However, commencement of the bankruptcy two days later, and the automatic stay prevented People's Capital from taking physical possession of the Printing Press.[3]

The Debtor's schedules declare the value of the Printing Press to be $400,000. People's Capital filed a proof of claim in this bankruptcy in the amount of $376,587.76. People's Capital's proof of claim estimates the value of the Printing Press to be $380,000. People's Capital's proof of claim does not offer any details to show how much of its claim is related to principle, interest, attorney's fees, and other costs. However, People's Capital acknowledged in its Supplemental Brief that there was about $16,000 of equity in the Printing Press at the commencement of the case. (Supplemental Brief, pg. 4, lines 1-3.) There is no dispute that People's Capital's interest in the Printing Press is that of a secured creditor. People's Capital acknowledged at oral argument that its Sales Contract is not a true lease and it waived the right to seek the protections available to a lessee under § 365.[4]

---

[3]People's Capital does not address the enforcement/possession process. The court understands that the Printing Press is not a portable device and not easily movable, like an automobile or a piece of office equipment. Physical removal of the Printing Press would require several days of work by a team of technicians. The Printing Press would have to be dismantled and transported in pieces to another location.

[4]Pursuant to the Sales Contract, the Debtor could buy out People's Capital's residual interest in the Printing Press for $101. Based on this, the Debtor contends that the Sales Contract was really a disguised financing agreement. Throughout the moving papers, People's Capital refers to the Sales Contract as a "lease." Had the court determined that the Contract was a true lease, People's Capital could have moved to compel assumption or rejection of the Contract in addition to adequate protection. People's Capital would also have been entitled to assert an

3

**Issue Presented.**

People's Capital seeks an award of "adequate protection" for its interest in the Printing Press measured by the estimated decline in its value prior to the hearing on the Motion. People's Capital's Motion was not heard until April 23, 2009, exactly six months after the petition was filed. The issues before the court are: (1) was People's Capital's interest in the Printing Press adequately protected prior to the hearing on the Motion; and (2) if not, is People's Capital entitled to retroactive compensation for the period between commencement of the case and the hearing.

**Analysis and Conclusions of Law.**

Applicable Law. The term "adequate protection," as it applies to this Motion, is defined in § 361 as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by–
>
> (1) requiring the [debtor-in-possession in a chapter 11] to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, [or the] use, sale, or lease under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property;
>
> . . .

Adequate protection for the use of property is addressed in § 363(e), in pertinent part as follows:

> [A]ny time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor-in-possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

Ordinarily in a motion for relief from stay, the debtor has the burden of proof regarding the issue of adequate protection. § 362(g)(2). Here, the questions of possession, use, stay relief, and prospective adequate protection have been resolved by the Stipulation. The issue now before the court concerns *retroactive*

administrative claim for the postpetition possession and use of the Printing Press.

4

1  compensation for depreciation that occurred prior to the time that People's Capital
2  brought this issue before the court.  Since §§ 362(g)(2) and 363(e) both appear to
3  deal with *prospective* compensation, the court concludes that People' Capital has the
4  burden of proof on that issue.

5       Compensation for Use of the Printing Press.  By statute, adequate protection
6  should be measured by the amount that the automatic stay, coupled with the
7  Debtor's use of the Printing Press, "results in a decrease in the value" of the Printing
8  Press. § 361(1).  People's Capital seeks adequate protection for depreciation of the
9  Printing Press measured by the passage of time and "depreciating economic
10  conditions," not for damages, wear and tear, or any other factor related to the
11  Debtor's possession and usage of the Printing Press.  People's Capital makes no
12  showing, nor does it even contend, that the Printing Press is physically at risk, or
13  that it is being damaged through the Debtor's continued possession and use.

14       Compensation for Postpetition Depreciation.  People's Capital contends that,
15  but for the filing of the bankruptcy, People's Capital would have been protected
16  through its ability to take possession of the Printing Press.  People's Capital
17  contends that the value of the Printing Press decreased by $45,000 after the
18  bankruptcy petition was filed.  People's Capital's expert witness, James R. White,
19  attributed the decrease in value to "deteriorating economic conditions." (White
20  Declaration, ¶ 9.)  At commencement of this case, People's Capital already had a
21  writ of possession for the Printing Press from the state court.  Yet, People's Capital
22  waited six months before coming to this court to seek adequate protection for its
23  interest in the Printing Press.  To justify this delay, People's Capital acknowledges
24  that there was an equity cushion in the Printing Press.  People's Capital argues that
25  it was not necessary to seek adequate protection until its counsel began working on
26  the Motion in February 2009; "Therefore, seeking relief from stay or adequate
27  protection at the time of the Bankruptcy filing would have been considered
28  unwarranted and premature . . . ." (Supplemental Brief, pg. 4, lines 3-5.)  Based on

1   this admission, it appears that People's Capital was adequately protected for some

2   period of time and that the date of filing is not the date from which adequate

3   protection should be calculated.

4        The irony in People's Capital's argument lies in the fact that the Printing

5   Press would have depreciated in value through the passage of time even if People's

6   Capital had taken physical possession and removed the Printing Press to another

7   location for storage pursuant to the state court's writ. In addition, People's Capital

8   would have been compelled to invest in the not insignificant cost of removing and

9   storing the Printing Press until the state court issued a judgment in the Civil Action

10  authorizing sale of the Printing Press. People's Capital makes no showing as to

11  when the Printing Press could have been sold after that. This court is not persuaded

12  that People's Capital was economically harmed prior to the hearing on this Motion

13  *as a result* of the automatic stay.

14       People's Capital cites the cases of *First Federal Bank of California v.*

15  *Weinstein (In re Weinstein)*, 227 B.R. 284 (9th Cir. BAP 1998) and *Paccom Leasing*

16  *Corporation v. Deico Electronics, Inc. (In re Deico Electronics, Inc.)*, 139 B.R. 945

17  (9th Cir. BAP 1992) in support of its argument that retroactive adequate protection is

18  required by the Bankruptcy Code. The court finds both cases to be inapposite to the

19  issue presented here. *Weinstein* supports the proposition that adequate protection

20  payments should compensate the secured creditor for depreciation of its collateral.

21  *In re Weinstein*, 227 B.R. at 296. Weinstein's bankruptcy petition was filed in July

22  1994. The secured creditor did not file its motion for relief until months later. The

23  bankruptcy court ordered the debtor to make adequate protection payments

24  commencing in April 1995. *Id.* at 288. Altogether, the debtor paid $98,000 in

25  adequate protection payments before its chapter 11 plan was confirmed in October

26  1996. The bankruptcy court did not order the payment of retroactive adequate

27  protection. Indeed, that issue was not even raised in the case. The issue on appeal

28  concerned application of the adequate protection payments that were made. The

6

creditor wanted the payments applied to the unsecured portion of its claim, which
the court rejected because it would give the creditor "an unwarranted bonus" over
the other unsecured creditors. *Id.* at 297. Since the adequate protection was
intended to protect the creditor from depreciation of its collateral, the court ruled
that the payments could be applied to reduce the secured portion of the claim.
Nothing in *Weinstein* supports the proposition that the court must award adequate
protection payments for depreciation prior to the creditor's first request for relief.

People's Capital contends that "adequate protection" should be calculated
from the date it could have taken possession of the Printing Press. Indeed, the court
in *Deico* held that the formula for calculating adequate protection should begin from
the time the creditor could have exercised its "nonbankruptcy" remedies. However,
*Deico* did not address what "nonbankruptcy" remedies should control. *Deico*
implicitly rejected the creditor's contention that adequate protection must begin at
commencement of the case or that it must be awarded retroactively: "the
bankruptcy court must have discretion to fix any initial lump sum amount, the
amount payable periodically, the frequency of payments, and the beginning date, all
as dictated by the *circumstances of the case* and the sound exercise of that
discretion. *In re Deico*, 139 B.R. at 947 (emphasis added). Addressing the
retroactivity issue, the court in *Deico* also recognized that "[R]equiring a lump sum
of past due protection could suffocate a debtor otherwise able to reorganize." *Id.* at
947.

The court in *Deico* cautioned against the award of retroactive adequate
protection:

> *In re Craddock-Terry Shoe Corp.*, 98 B.R. 250, 255
> (Bankr.W.D.Va.1988) held that a creditor was entitled to
> adequate protection from the date of the debtor's petition.
> *Accord, In re Ritz-Carlton of D.C., Inc.*, 98 B.R. 170, 173
> (S.D.N.Y.1989) *Ritz-Carlton* nevertheless cautioned that
> adequate protection should not run from a date earlier than
> when debtor could reasonably anticipate that it would be
> required. Collier maintains that "[i]n the case of an adequate
> protection valuation, the determinative date should be when the

7

protection was first sought." *Collier on Bankruptcy*
¶ 506.04[2] at pp. 506-38 (15 ed. 1992).

The bankruptcy code does not specifically provide for a date
upon which adequate protection payments should commence,
but the purpose of adequate protection lends assistance to that
inquiry. . . .

Accordingly, adequate protection analysis requires the
bankruptcy court to first determine when the creditor would
have obtained its state law remedies had bankruptcy not
intervened. Presumably, that will be after the creditor first
seeks relief. The court must then determine the value of the
collateral as of that date. This is consistent with Collier's
admonition that value should be determined as of when the
protection is sought.

*Id.* at 946-47.

People's Capital argues that the automatic stay prevented it from taking

possession of the Printing Press. However, People's Capital's expert witness, James

R. White, stated in his declaration that the Printing Press was losing value, as of the

hearing on the Motion, at the rate of 12% per year, or about $3,350 per month.

Based on this, it would appear that People's Capital is fully protected, from the date

it presented its request to the court, with the payments provided in the Stipulation.

As for any additional compensation, the critical but unanswered question for

People's Capital is, when could People's Capital have actually liquidated the

Printing Press in the state court proceeding. As noted above, there is no evidence to

suggest that the Printing Press depreciated significantly as a result of the Debtor's

postpetition use. There is no evidence to suggest that the Printing Press would have

retained its value while sitting in storage awaiting a judgment in the state court

proceeding. The temporal depreciation referred to in Mr. White's declaration would

have happened even if the bankruptcy had not been filed and People's Capital

would have incurred a substantial additional expense to remove and store the

Printing Press.

/ / /

/ / /

8

1    Prejudice to the Debtor. People's Capital's demand for retroactive
2    compensation, six months into the bankruptcy case, raises another troubling issue:
3    prejudice to the Debtor. People's Capital obtained a writ of possession in October
4    2008, yet it waited six months to come before this court and seek relief. The Debtor
5    has stipulated with People's Capital to make prospective adequate protection
6    payments in an amount which the Debtor, presumably, can afford. People's Capital
7    now wants to burden the reorganizing Debtor with an additional $45,000 obligation.
8    People's Capital's demand significantly increases the risk that this Debtor will not
9    be able to reorganize.

10    At oral argument, the court asked the Debtor why it did not bring its demand
11    for adequate protection early in the case - on shortened time if necessary - and seek
12    a resolution that did not unfairly burden the Debtor. People's Capital's response is
13    unpersuasive. First, People's Capital acknowledges that it was adequately protected
14    through an equity cushion in the Printing Press at the commencement of the case.
15    Second, People's Capital contends that it was diligent in attempting to negotiate an
16    adequate protection agreement with the Debtor. People's Capital did not actually
17    start preparing its Motion until February 2009, four months after commencement of
18    the case. It did not seek a hearing on its Motion for an additional two months. If
19    People's Capital genuinely believed that its interest in the Printing Press was
20    imminently at risk, it should have brought that issue to the court and sought some
21    form of protection as soon as possible. By delaying that request, and failing to raise
22    it within a reasonable time, People's Capital has waived its right to retroactive
23    relief.

24    **Conclusion.**

25    Based on the foregoing, the court finds and concludes that People's Capital is
26    not entitled to compensation for depreciation of its collateral prior to the time that it
27    first presented its request for adequate protection. The court is not persuaded that
28    People's Capital suffered any economic loss *as a result* of the automatic stay and

9

the Debtor's continued possession and use of the Printing Press.  The Debtor has stipulated to make prospective adequate protection payments from the time People's Capital presented its request for relief to the court.  That level of payment can be modified in the future if necessary to protect People's Capital due to changed circumstances.  No further adequate protection is required at this time.  The Motion for retroactive adequate protection will be denied.

Dated: August _____, 2009

W. Richard Lee
United States Bankruptcy Judge